United States Bankruptcy Court
Southern District of Texas
**ENTERED**
August 18, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 13-30466 |
| **IMPERIAL PETROLEUM RECOVERY** | § | |
| **CORPORATION,** | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |
| | § | |
| **DON B. CARMICHAEL,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 14-3375 |
| | § | |
| **THOMAS BALKE,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

Carmichael *et al.* and Balke *et al.* are again before the Court.[1] In this installment, the parties' fight centers on the viability of the Bankruptcy Court's 2018 Judgment and its attorneys' fee award. (*See* ECF No. 275). Defendants argue that the 2018 Judgment must be vacated in its entirety. Plaintiffs acknowledge that the 2018 Judgment's damages award can be modified, but argue that the remainder of the Judgment must be left intact—particularly, the Judgment's award of attorneys' fees.

---

[1] The Plaintiffs to this proceeding are Don Carmichael, KK & PK Family LP, Barry Winston, and Gary Emmott. Plaintiffs were investors in Imperial Petroleum Recovery Corporation, the Debtor in the main bankruptcy case from which this adversary proceeding arose. The Defendants are Thomas Balke, Basic Equipment, and Ultratec LLC. Mr. Balke owns both Basic and Ultratec. Imperial stored property, with which Plaintiffs contend Defendants interfered, at Basic Equipment under the care of Mr. Balke. A detailed background of this dispute's origins is set out in the Court's March 11 Memorandum Opinion. (*See* ECF No. 692; *see also* ECF Nos. 242, 274).

Based on the Court's March 11, 2021 Memorandum Opinion (ECF No. 692), the 2018 Judgment must be amended. Defendants are entitled to relief from portions of the prior damages award, portions of the attorneys' fee award, and the prior grant of injunctive relief.

## BACKGROUND

The legal world's most *cliché* literary reference provides a befitting description of this case: "[This] suit has, in course of time, become so complicated that no man alive knows what it means. . . . [S]till [it] drags its dreary length before the court, perennially hopeless." Charles Dickens, *Bleak House*, in 1 WORKS OF CHARLES DICKENS 4–5 (1891). The parties to this case have now spent more than 30 days before the Court, the pages of briefing and evidence are too numerous to count, and the judges presiding over this dispute can hardly draw breath without one of the parties filing an appeal. Hopefully, this decision will bring some semblance of order to the procedural morass that is this case.

The parties' dispute stretches back to 2014, when Plaintiffs accused Defendants of stealing certain property Plaintiffs acquired from Imperial Petroleum Recovery Corporation's bankruptcy estate. In 2018, Judge Jeff Bohm (now retired) entered a judgment in favor of Plaintiffs. (*See* ECF No. 275). The 2018 Judgment awarded Plaintiffs: (1) $1,957,812.00 in actual damages; (2) $275,880.06 in attorneys' fees; (3) $50,794.96 in costs; (4) a declaration that Plaintiffs owned the property on which this suit centers; and (5) an injunction directing Defendants to turn over all property the court found to be owned by Plaintiffs. (ECF No. 275 at 2–3). Two memorandum opinions supported the relief granted by the 2018 Judgment. (*See* ECF Nos. 242, 274).

Following entry of the 2018 Judgment, Defendants filed a Rule 59 motion. Defendants asserted that the 2018 Judgment was based on manifest errors of law or fact. In 2020, the District Court sent the case back to the Bankruptcy Court with instructions to consider Defendants' Rule

59 motion on its merits. After a five-day trial, the Court issued a Memorandum Opinion disposing of Defendants' Rule 59 motion on its merits. (*See* ECF No. 692). The Court determined that the 2018 Judgment's damages award was based on manifest errors of law and fact, and that Plaintiffs were only entitled to $4,000 in actual damages. (*See* ECF No. 692). However, because of the limited remand order, the Court did not enter a new judgment. (ECF No. 692 at 23).

Soon after the Court issued its Memorandum Opinion, Defendants asked the District Court to again remand the case to this Court with instructions to enter a new judgment based on the March 11 Memorandum Opinion. (Dist. Ct. Case No. 18-00731, ECF No. 73 at 1–4). Plaintiffs, on the other hand, filed a Notice of Appeal of the March 11 Memorandum Opinion. (*See* Dist. Ct. Case No. 18-00731, ECF No. 68). The District Court granted Defendants' request for remand and closed the appeal. (*See* Dist. Ct. Case No. 18-00731, ECF No. 75 (the "Remand Order")). The Remand Order directed this Court to "determine whether [the] court's March 11, 2021 memorandum opinion requires vacatur or modification of [the] 2018 final judgment." (Dist. Ct. Case No. 18-00731, ECF No. 75 at 1–2).

On remand, the Court directed the parties to file briefing addressing the March 11 Memorandum Opinion's effect on the 2018 Judgment. (*See* ECF No. 706). The parties were specifically asked to address whether the 2018 Judgment's attorneys' fee award should be reduced or vacated. (ECF No. 706 at 1).

After the parties filed the requested briefing, the Court took the matter under advisement.

## JURISDICTION

The Court's jurisdiction over this adversary proceeding originated under 28 U.S.C. § 1334. Initially, this case was referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a). The Court issued its prior Memorandum Opinion on remand from the District Court consistent with Federal

Rule of Bankruptcy Procedure 8008(c).  Here again, this case comes to the Court on remand from the District Court.  *See* FED. R. BANKR. P. 8008(c).

Plaintiffs maintain, however, that this Court lacks jurisdiction to carry out the District Court's remand directive for two reasons.  First, Plaintiffs argue that their Notice of Appeal of this Court's Memorandum Opinion, (*see* ECF No. 694), deprived this Court of jurisdiction to act on the Remand Order.  Second, according to Plaintiffs, Defendants waived their right to have this Court reconsider the 2018 Judgment's attorneys' fee award.

As support for their contention that their Notice of Appeal deprived this Court of jurisdiction, Plaintiffs cite *no* authority.  A first principle of appellate practice is that only "judgments, not statements in opinions," are appealable.  *California v. Rooney*, 483 U.S. 307, 311 (1987) (quoting *Black v. Cutter Lab'ys*, 351 U.S. 292, 297 (1956)) (internal quotation marks omitted); *United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596, 602 (5th Cir. 2015); *see also* 28 U.S.C. § 158(a) (2020).  Because the Court only issued a Memorandum Opinion, not a judgment, Plaintiffs' Notice of Appeal was premature.  Unsurprisingly, the District Court "closed" Plaintiffs' appeal.  (Dist. Ct. Case No. 4:18-cv-00731, ECF No. 75 at 2).  Under Bankruptcy Rule 8008(c), the closing of Plaintiffs' appeal terminated the District Court's jurisdiction and reinstated this Court's jurisdiction over the matter.  *See* FED. R. BANKR. P. 8008(c) ("[T]he district court or BAP may remand [to the bankruptcy court] for further proceedings, but it retains jurisdiction *unless it expressly dismisses the appeal*." (emphasis added)).  In sum, Plaintiffs' Notice of Appeal of the Memorandum Opinion did not deprive this Court of jurisdiction to carry out the District Court's remand directive.[2]

---

[2] Plaintiffs also appealed the Remand Order to the United States Court of Appeals for the Fifth Circuit.  (*See* Dist. Ct. Case No. 4:18-cv-00731, ECF No. 76).  The Fifth Circuit dismissed that appeal.  (5th Cir. Case No. 21-20228, Jul. 9, 2021 Order).

Moreover, this Court is duty-bound to implement the District Court's remand directive. In the unlikely event that there is fault with the District Court's Remand Order, it cannot be corrected by this lower Court. Plaintiffs must direct their concerns to the District Court.

Plaintiffs argue (also with little authoritative support) that Defendants waived their right to review of the prior attorneys' fee award. Plaintiffs' argument is unavailing. The Judgment's attorneys' fee award rested on a finding that Plaintiffs established their entitlement to actual damages and costs under 11 U.S.C. § 362(k). (*See* ECF No. 242 at 78, 80). Once it found that Plaintiffs were entitled to attorneys' fees under the mandatory provisions of § 362(k), the court had to determine the reasonable amount fees to award. (ECF No. 242 at 78). Plaintiffs are correct, Defendants did not challenge this reasonableness analysis. (*Compare* ECF No. 274 *with* ECF No. 282 at 1–3). However, Defendants' failure to challenge the independent findings and conclusions underlying the reasonableness of Plaintiffs' fee award does not deprive this Court of jurisdiction to reconsider the fee award.

A court's review of a Rule 59 motion is not confined to the issues raised in the motion. *See EEOC v. United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus.*, 235 F.3d 244, 250 (6th Cir. 2000) (quoting *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir. 1986)) ("[A] judge may enlarge the issues to be considered in acting on a timely motion under Rule 59." (internal quotation marks omitted)); *see also* WRIGHT & MILLER, 11 FED. PRAC. & PROC. CIV. § 2817 (3d ed. 2021) ("[The court] held that it was empowered to correct any error that came to its attention and was not limited to those errors alleged in the motion."). This broad power of review allows trial courts to "correct [their] own errors," thereby reducing the burden on appellate courts. *Charles*, 799 F.2d at 348 (citing *United States v. Dieter*, 429 U.S. 6, 8 (1976)).

Here, the substantially reduced damages award, (*see* ECF No. 692 at 20–23), undermines the correctness of the attorneys' fee award. The fee award's apparent infirmity stems from its statutory basis. That is, the fee award was predicated on a finding that Defendants violated the automatic stay, which entitled Plaintiffs to "recover actual damages, *including costs and attorneys' fees*." 11 U.S.C. § 362(k). Yet the "actual damages" Plaintiffs were found to have suffered are now just over 1% of the attorneys' fees awarded to Plaintiffs. Such drastic disparity begs for reconsideration under Rule 59. *Cf. Charles*, 799 F.2d at 345–47 (recognizing a trial court's ability to address additional issues presented by (but not explicitly raised in) a party's Rule 59 motion); *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003) (reversing a damages award and remanding to the district court for consideration of the prior attorneys' fee award in light of the damages' reversal).[3]

Consistent with the District Court's order, this Court will determine whether, based on its prior Memorandum Opinion, the 2018 Judgment should be modified or vacated. (*See* Dist. Ct.

---

[3] Contrary to Plaintiffs' alarm, (ECF No. 716 at 5), the Court's reconsideration of the attorneys' fee award will not prejudice Plaintiffs. Though Plaintiffs offer few details about the prejudice they will purportedly suffer, they do argue (without supporting legal authority) that the Court's reconsideration will deprive Plaintiffs of "due process" because they have not had an opportunity to present additional evidence and argument supporting the correctness of the fee award. (ECF No. 716 at 5). This contention is patently incorrect. First, Plaintiffs were afforded an opportunity to put on *extensive* evidence establishing the correct fee award over a two-day hearing in 2017. (*See* ECF No. 274 at 2–3). Second, Plaintiffs were then afforded five days before the Court on the Court's initial consideration of Defendants' Rule 59 motion. (*See generally* ECF No. 692). Finally, the Court expressly invited the parties to file briefing identifying evidence in the record establishing the correctness of the prior fee award. (ECF No. 706 at 1); *accord Charles*, 799 F.2d at 346–47 (discussing a trial court's invitation to file briefing on the effect of an intervening change in the law on the court's disposition of a Rule 59 motion). The *entire* record is now before the Court as it considers Defendants' Rule 59 motion. *See Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 349 (5th Cir. 1989) ("[In disposing of a motion for reconsideration], the Judge has to consider judicially the record as it exists at the time of the motion for reconsideration not just as it existed at the time of the initial ruling."). Curiously, while they cry prejudice over an inability to put on additional supporting evidence, Plaintiffs do not suggest that they have additional evidence (that is not already before the Court) supporting the correctness of the fee award. Rule 59 is a vehicle to present *new evidence*, not rehash the same evidence and arguments that have been before the Court for almost four years. *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir.2004). Plaintiffs cannot credibly suggest they are being denied "due process" at this point.

Case No. 4:18-cv-00731, ECF No. 76 at 1–2). This determination may result in modification of the Judgment's fee award, which the Court may properly consider.[4]

## DISCUSSION

Defendants seek vacatur, or at least modification, of the 2018 Judgment. Aside from their erroneous jurisdictional objections, Plaintiffs do not suggest that the 2018 Judgment should be left unmodified. Primarily, the parties disagree over (1) whether vacatur or modification of the attorneys' fee award is appropriate, and (2) whether the vacatur of the injunctive relief granted in the Judgment is appropriate. Entry of an Amended Judgment is appropriate.

### A. Damages Award

Plaintiffs do not dispute the need for modification of the prior Judgment's damages award. The March 11 Memorandum Opinion establishes that the 2018 Judgment's damages award of $1,957,812.00 was based on manifest errors of law and fact. (ECF No. 692 at 18). Hence, the prior damages award must be amended. *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002) (quoting *Waltman v. International Paper Co.*, 875 F.2d 468, 473 (5th Cir.1989)). Plaintiffs are awarded actual damages of $4,000. (ECF No. 692 at 23).

### B. Attorneys' Fee Award

Defendants urge the Court to reduce Plaintiffs' attorneys' fee award on proportionality grounds.[5] Plaintiffs counter that disproportionality alone cannot serve as a basis for reducing a fee

---

[4] Even if Defendants' request for reconsideration of the fee award is not properly before the Court as part of Defendants' original Rule 59 motion, the Court may nevertheless consider Defendants' request under Rule 60(b). *See Flowers v. S. Reg'l Physician Servs., Inc.*, 286 F.3d 798, 801 (5th Cir. 2002) (holding that Rule 60(b)(5) may be used to attack a prior fee award predicated on a since substantially reduced or vacated damages award); *see also Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 470 (5th Cir. 1998) ("[A] court may treat an untimely Rule 59(e) motion to alter or amend the judgment as if it were a Rule 60(b) motion if the grounds asserted in support of the Rule 59(e) motion would also support Rule 60(b) relief." (internal quotation marks omitted)).

[5] Defendants do not challenge the reasonableness of the findings and conclusions on which the prior fee award was based, nor do Defendants argue that Judge Bohm erred in the methodology used to reach the prior fee

award. While Plaintiffs offer a correct statement of the law, other factors warrant a reduction in the fee award. Based on Plaintiffs' limited success and fee awards in similar cases, Plaintiffs' attorneys' fee award is reduced to $40,968.19.

Under § 362(k), a "willful violation" of the automatic stay "shall" be redressed with "actual damages, including costs and attorneys' fees." 11 U.S.C. § 362(k)(1). Based on § 362(k)(1)'s plain language, actual damages are a necessary predicate to an award of attorneys' fees. *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008). The fee award is not, however, limited to fees "include[ed]" in the "actual damages suffered," but may also encompass fees "incurred prosecuting a § 362(k) claim." *Id.*

Section 362(k) does not explicitly subject fee awards to the same reasonableness standards applied under §§ 330 and 331. (ECF No. 274 at 8). Nevertheless, it is appropriate to employ the lodestar method—which was used to calculate the prior fee award—to determine a reasonable fee award for successfully prosecuting a § 362(k) claim. *See In re Horne*, 876 F.3d 1076, 1084 (11th Cir. 2017) ("An award of attorneys' fees [under § 362(k)] is governed by a reasonableness standard using the lodestar approach."); *In re Burns*, 503 B.R. 666, 676 (Bankr. S.D. Miss. 2013) (applying the lodestar method to determine the reasonable amount of attorneys' fees to award under § 362(k)); *In re Charity*, 16-31974-KLP, 2017 WL 3580173, at *26 (Bankr. E.D. Va. Aug. 15, 2017) (same); *In re Voll*, 512 B.R. 132, 141 (Bankr. N.D.N.Y. 2014) ("Courts frequently apply the standards used in determining the reasonableness of compensation under § 330 in determining what fees and costs are reasonable and necessary in the prosecution of a § 362(k) cause of action. . . . The analysis begins with the "lodestar" calculation . . . ."); (*see also* ECF No. 274 at

---

award. The sole issue Defendants raise is whether the prior fee award can be sustained in light of the Memorandum Opinion's findings.

8); *accord McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) ("The linchpin of the reasonable fee [under federal fee-shifting statutes] is the lodestar calculation, a product of the hours reasonably expended by the law firms and the reasonable hourly rate for their services."). To disturb the prior fee award, Defendants had to demonstrate the award rested on manifest errors of fact or law. *See Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990)) ("A motion to alter or amend judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence." (internal quotation marks omitted)).

Defendants contend that the substantially reduced damages award exposes the manifest error underlying the attorneys' fee award. That is, Defendants argue, "now that the degree of Plaintiffs' success on the merits has changed, the fee award should also change." (ECF No. 715 at 4). Plaintiffs say that their counsel's "substantial success" is but one factor of many on which the fee award was based, and that disproportionality between the damages award and the attorneys' fee award cannot alone undermine the fee award.

In support of their position, Plaintiffs' stress Fifth Circuit authority supporting the proposition that "a low damages award . . . should not [*alone*] lead the court to reduce a fee award." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 830 (5th Cir. 2003)) (internal quotation marks omitted). Relying on this authority, Plaintiffs argue that the fee award remains "just." (ECF No. 716 at 7). Plaintiffs' reliance is misplaced. The cases on which Plaintiffs rely sit in a fundamentally different posture than the case here. Unlike here, the cases on which Plaintiffs rely address the proportionality of attorneys' fee awards that were challenged directly on appeal. *See Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 353–55 (5th Cir. 2001) (holding that a trial court did not

abuse its discretion in refusing to reduce a jury's award of attorneys' fees that greatly exceeded the jury's damages award); *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392–93 (5th Cir. 2000) (dismissing a defendant's challenge to an attorneys' fee award premised on the disproportionality between the fee award and the damages award).[6] Moreover, in these cases, the trial courts had the benefit of awarding attorneys' fees while cognizant of the damages awarded. *See Saizan*, 448 F.3d at 798–99 (reviewing a district court's award of attorneys' fees following the parties' settlement of the plaintiffs' damages); *Hollowell*, 217 F.3d at 391 (reviewing a district court's award of attorneys' fees following a jury's award of damages); *accord Northwinds*, 258 F.3d at 353–55 (reviewing a district court's refusal to reduce attorneys' fees awarded by a jury that also determined actual and treble damages).

Here, however, the prior award of attorneys' fees was determined without the benefit of such cognizance. The award was unquestionably founded on the success Plaintiffs achieved at trial. Throughout the findings and conclusions underlying the fee award, the award's reasonableness was supported by the "very successful result" Plaintiffs achieved. (*See, e.g.*, ECF No. 274 at 10, 20–23, 25, 41–43, 51, 54–56, 58–60, 65, 70). In fact, at the time of its assessment, the $275,880.06 award (14.1% of the original damages award) was "certainly in line with the percentages of fees awarded in other successful [§ 362(k)] suits." (ECF No. 274 at 70). However, Plaintiffs' "very successful result" was the product of manifestly erroneous findings of fact and law. These erroneous findings essentially deprived the court of an opportunity to assess the proportionality between Plaintiffs' attorneys' fee request and the *correct* damages award.

---

[6] Plaintiffs also rely on *Saizan v. Delta Concrete Products*, 448 F.3d at 799, for the bare proposition that "[w]hile a low damages award is one factor which the court may consider in setting the amount of fees, this factor alone should not lead the court to reduce a fee award." (ECF No. 716 at 5–6). Like *Hollowell* and *Northwinds*, *Saizan* dealt with a direct appeal of an attorneys' fee award. *Compare Hollowell*, 217 F.3d at 392–93, *and Northwinds*, 258 F.3d at 354–55, *with Saizan*, 448 F.3d at 799 ("We are persuaded that the District Court did not abuse its discretion in refusing to depart from the adjusted lodestar amount.").

Yet the cases Plaintiffs cite suggest that proportionality should at least be considered in awarding attorneys' fees. *See Northwinds*, 258 F.3d at 354 (quoting *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)) ("[I]t is well established that the most critical factor in determining an award of attorneys' fees is the 'degree of success obtained' by the victorious plaintiffs."); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor [in awarding attorneys' fees] is the degree of success obtained."); *accord Saizan*, 448 F.3d at 799 (quoting *Singer*, 324 F.3d at 830) ("[A] low damages award is one factor which the court may consider in setting the amount of fees. . . ."); *Hollowell*, 217 F.3d at 392 (same). Since the prior fee award was based on an insufficient consideration of proportionality, it is appropriate to reconsider the prior fee award in light of the corrected damages award. *Cf. Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010) (remanding because the trial court did not explicitly consider the factors set out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 716–19 (5th Cir. 1974)).

The reversal or reduction of a damages award will often require a recalculation of any statutory award of attorneys' fees. *See Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 388 (5th Cir. 2013) (citing *Nabors Drilling*, 330 F.3d at 395) ("Because the new damages that will be awarded are relevant to plaintiffs' overall success in litigating this suit, we vacate the amount of the attorneys' fee award and remand for recalculation."). The recalculation of an attorneys' fee award must account for the actual degree of success obtained. *See Combs v. City of Huntington, Tex.*, 829 F.3d 388, 395–96 (5th Cir. 2016) (citing *Hensley*, 461 U.S. at 436–37) ("[In awarding statutory attorneys' fee, t]he district court may properly compare what [Plaintiff] sought with what she was ultimately awarded.").[7] Courts wield "discretion in making [an] *equitable judgment*"

---

[7] The Fifth Circuit has forcefully directed trial courts, in calculating the appropriate fee award under a fee-shifting statute, to consider "the result obtained relative to the fee award, and the result obtained relative to the result

regarding the appropriate calculation of an attorneys' fee award in light of a plaintiff's *actual* degree of success. *See id.* at 396 (citing *Hensley*, 461 U.S. at 436–37) (emphasis added).

Had the prior fee award accounted for the correct damages award, it is likely the lodestar calculation of attorneys' fees would have been reduced based on the *Johnson* factors. *See Johnson*, 488 F.2d at 716–19. *Johnson* directs courts to consider "[t]he amount involved [in the suit] and the results obtained" in calculating an attorneys' fee award. *Id.* at 718. And in calculating the prior fee award, the court expressly declined to enhance or reduce its lodestar calculation based on *Johnson*. (ECF No. 274 at 55). Yet the Fifth Circuit has directed trial courts to consider immense disparity between a damages award and the corresponding request for attorneys' fees. *See Migis*, 135 F.3d at 1048. So, on reconsideration, the immense disparity between the new damages award and the prior fee award must be reconciled.

A court's ability to reduce fee requests based on a party's limited success is well settled. *See Martinez v. Ranch Masonry, Inc.*, 760 F. App'x. 288, 291 (5th Cir. 2019) (affirming a 50% reduction to a fee request that was 37 times greater than the damages award); *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018) (approving a 60% reduction to a fee request that was 33 times greater than the damages award); *Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 432 (5th Cir. 2017) (holding that an 82% reduction to a fee request was appropriate where the fee request was 79 times greater than the damages award); *see also In re Rose*, 17-42053, 2020 WL 6877927, at *19 (Bankr. E.D. Tex. Oct. 14, 2020) (applying a downward adjustment to a fee award where the damages award that was only 5% of the damages requested). However, fee

---

sought." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998) (holding that a trial court *abused its discretion* in failing to adequately reduce an attorneys' fee award that was more than "six and one-half times" the damages award).

requests cannot be reduced based "solely" on one *Johnson* factor. *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013).

Here, the disparity between the damages award and the fee request, as well as awards in similar cases guide the reconsideration of Plaintiffs' fee request. *See Johnson*, 488 F.2d at 718–19. Also relevant on reconsideration is the success Plaintiffs achieved on the claims they brought. *See City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986) ("[T]he judge should consider whether or not the plaintiff's unsuccessful claims were related to the claims on which he succeeded, and whether the plaintiff achieved a level of success that makes it appropriate to award attorney's fees for hours reasonably expended on unsuccessful claims . . . ."); *see also Gurule v. Land Guardian, Inc.*, 4:15-CV-03487, 2017 WL 6761821, at *7–8 (S.D. Tex. Oct. 24, 2017), *aff'd*, 912 F.3d 252 (5th Cir. 2018) (reducing a fee request where only one of four plaintiffs recovered only 4% of the damages requested); *Rose*, 2020 WL 6877927, at *19 (reviewing a fee request in light of the plaintiff's success "on only two of approximately one dozen legal claims").

In their complaint, Plaintiffs sought actual damages "in excess of $500,000" and noted that their damages "may exceed $1,000,000." (ECF No. 62 at 32). At trial, Plaintiffs presented a damages model supporting a request for roughly $1.9 million in actual damages. (ECF No. 242 at 70–77). In awarding Plaintiffs attorneys' fees, the court specifically noted:

> There is no question that because the Plaintiffs have been successful in prosecuting their § 362(k)(1) claims against the Defendants by proving, among other things, that their actual damages total $1.9 million, they are entitled to recover the reasonable attorneys' fees and costs that they have incurred in prosecuting this adversary proceeding.

(ECF No. 274 at 8). In short, the amount at issue based on Plaintiffs' theory of this case was $1.9 million in actual damages. Yet Plaintiffs only obtained $4000 in actual damages (less than one-half of 1% of the damages Plaintiffs sought). This disparity between the damages sought and the

damages awarded suggests a reduction of Plaintiffs' fee request is warranted. *See Gurule*, 2017 WL 6761821, at *7–8; *Rose*, 2020 WL 6877927, at *19 ("[Plaintiffs] sought a judgment of as much as $20 million . . . , nearly twenty times the $1.1 million damages awarded . . . . This factor warrants a downward adjustment to the requested fees."); *see also Johnson*, 488 F.2d at 718.

Moreover, the prior fee award is no longer 15% of the damages award. The prior fee award is now almost 70 times greater than the correct damages award. This disproportionality alone also suggests Plaintiffs' fee award should be reduced. *See Migis*, 135 F.3d at 1048 ("We hold that the district court abused its discretion by failing to give adequate consideration to the result obtained relative to the fee award. . . ."); *see also Martinez*, 760 F. App'x at 291; *Gurule.*, 912 F.3d at 259; *Saldivar,* 675 F. App'x at 432. In fact, a fee request reduction of more than 80% would not be unwarranted. *See, e.g., Saldiver*, 675 F. App'x at 432 (approving an 82% reduction in fees); *accord Johnson*, 488 F.2d at 719.[8]

Finally, guidance in determining an appropriate fee award can be found by evaluating Plaintiffs' success in prosecuting their claims. Facially, Plaintiffs asserted two claims in their complaint based on Defendants' alleged interference with Plaintiffs' property—a willful stay violation claim and a claim for declaratory relief. (ECF No. 62 at 28–31). Plaintiffs were awarded actual damages on their stay violation claim, as well as declaratory relief. However, were these claims to be bifurcated with respect to the property with which Defendants purportedly interfered, Plaintiffs would have been unsuccessful on half of their claims. That is, Plaintiffs alleged

---

[8] An important distinction exists between the Fifth Circuit cases addressing disproportionality between a damages award and a fee request and this case. Many of the Fifth Circuit cases involve the fee-shifting provisions of civil rights statutes. *See, e.g., Migis*, 135 F.3d at 1044 (determining an appropriate fee award under Title VII's fee-shifting provisions). These fee-shifting provisions "facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain*, 649 F.3d at 381. Fee-shifting in the civil-rights context also allows plaintiffs "to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Rivera*, 477 U.S. at 574. In contrast, § 362(k)'s fee-shifting provision, while still of vital importance to debtors seeking a fresh-start, does not implicate the vindication of constitutional rights.

Defendants interfered with two MST 1000 units and were awarded damages based on this alleged interference. But it turned out that one of the MST 1000 units did not exist. Hence, Plaintiffs were only successful on the portions of their claims respecting the one existing MST 1000 unit.

Essentially, Plaintiffs retained an expert, conducted discovery, and presented evidence to support a claim for relief that could not be granted because the property with which Defendants allegedly interfered did not exist. If Plaintiffs could segregate their attorneys' fees incurred in pursuit of relief related to the non-existent MST 1000 unit (*i.e.,* viewing it as a separate claim), Plaintiffs could not recover those fees. *See Hensley*, 461 U.S. at 435 ("The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim."). But those fees cannot be segregated based on Plaintiffs' time records. To account for such intermingling, courts must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435 (holding that when a "lawsuit cannot be viewed as a series of discrete claims," courts must look to the overall success of the litigation to determine the appropriate fee award). In sum, the fees to which Plaintiffs are entitled must be viewed in light of both the fact that Plaintiffs prosecuted a stay violation claim over property that did not exist *and* the significant reduction in the "success" Plaintiffs achieved.

Plaintiffs were initially awarded $1,957,812.00 in actual damages—the entire amount Plaintiffs requested. Plaintiffs were specifically awarded $1,073,656.00 on account of Defendants' interference with a non-existent MST 1000 unit. This portion of the award amounts to roughly 55% of the total damages Plaintiffs requested. Reducing Plaintiffs' fee award by a commensurate 55% is appropriate because Plaintiffs were essentially unsuccessful in prosecuting their claim for

this portion of the damages award. *See id.* at 435 ("[N]o fee may be awarded for services on the unsuccessful claim."). After this reduction, Plaintiffs would be awarded $124,146.03 in attorneys' fees.

However, a reduction based on Plaintiffs' very limited success on their claim for damages arising from interference with the existing MST 1000 unit is also appropriate. *See Migis*, 135 F.3d at 1048. In total, Plaintiffs' counsel spent more than 1500 hours on this case. (ECF No. 274 at 5–6). In other stay violations cases, counsel often expended less than 100 hours prosecting § 362(k) claims. *See, e.g., In re Wilson*, 610 B.R. 255, 270 (Bankr. N.D. Tex. 2019) (finding 56.7 hours to be a reasonable time expenditure in prosecuting a stay violation); *In re Terry*, 18-44642-ELM-13, 2019 WL 7169095, at *9, *13 (Bankr. N.D. Tex. Dec. 23, 2019) (finding 27.2 hours to be a reasonable amount of time spent in prosecuting a stay violation); *In re Easley*, 10-32981-H3-13, 2012 WL 567031, at *1, *2 (Bankr. S.D. Tex. Feb. 21, 2012) (finding 14 hours to be a reasonable amount of time to dedicate to prosecuting a stay violation). Furthermore, while attorneys' fee awards in stay violation cases occasionally exceed the damages award, authoritative support for an attorneys' fee award 30 times greater than the damages award is lacking. *See, e.g., In re Burrell*, 10-36989, 2011 WL 6739577, at *1, *4 (approving attorneys' fees that were about seven times greater than the damages award resulting from the prosecution of a stay violation that was not "an easy, routine automatic stay violation"); *In re Loe*, 11-44598-DML-13, 2013 WL 6628960, at *11 (Bankr. N.D. Tex. Dec. 17, 2013) (awarding about $20,000 in attorneys' fees in a stay violation suit that resulted in a $26,000 damages award); *In re Collier*, 410 B.R. 464, 478–80 (Bankr. E.D. Tex. 2009) (approving $16,000 in attorneys' fees *and expenses* incurred in the prosecution of a stay violation claim resulting in a $21,820 damages award). Both the hours Plaintiffs' counsel

expended to achieve limited success, and the magnitude of the prior fee award (even after a 55% reduction) depart markedly from fee awards in cases with *larger* damages awards.

Based on a review of the record and in light of Plaintiffs' actual success, an additional 67% reduction to the prior fee award is appropriate—resulting in a fee award of $40,968.19. This amounts to about 135 hours billed at $300 per hour,[9] which is far closer to the amount of time expended in other stay violation cases. This award's relation to the damages award is also more closely aligned with the proportions between attorneys' fee awards and damages awards in similar cases ($40,968.19 is about 10 times greater than the $4000 damages award). Moreover, the aggregate reduction of the fee award (about 85% from the prior fee award) tracks fee award reductions based on similarly limited success. *See Saldivar*, 675 F. App'x at 432 (affirming an 82% lodestar reduction where the requested attorneys' fee award was 79 times greater than the damages award); *see also Gurule*, 912 F.3d at 259 (affirming a 60% reduction to an attorneys' fee request where the trial court emphasized the plaintiff's lack of success).

As evidenced by the substantially reduced damages award, the prior fee award rested on manifest errors of law and fact. Accounting for the correct damages award, Plaintiffs are entitled to an attorneys' fee award of $40,968.19. *See Johnson*, 488 F.2d at 718–19 (requiring a trial court to consider a plaintiff's success in relation to the fees requested, as well as fee awards in similar cases).

Finally, aside from baldly characterizing the cost award as "excessive," (ECF No. 715 at 4), Defendants do not articulate a further basis for the cost award's reconsideration.[10]

---

[9] John Marek billed roughly 1300 hours at $295.00, and Karen Emmott billed about 260 hours at $300 an hour. (ECF No. 274 at 5–6).

[10] Moreover, the cost award, unlike the prior fee award, was not explicitly based on Plaintiffs' degree of success. (ECF No. 274 at 64–70). Because the cost award was not explicitly tied to Plaintiffs' success, the Court cannot conclude that the award was based on manifestly erroneous findings of law or fact.

### C. Injunctive and Declaratory Relief

Defendants argue vacatur of the Prior Judgment's declaratory and injunctive relief is warranted based on the Memorandum Opinion. Aside from clarifying the scope of the relief granted by the 2018 Judgment, the Memorandum Opinion does not support vacatur of the declaratory relief. The prior grant of equitable relief, however, must be vacated.

The prior Judgment afforded Plaintiffs declaratory relief:

> ORDERED that the Plaintiffs own all of the Collateral (as that term is defined in the Findings of Fact and Conclusions of Law entered on the docket on September 21, 2017) that the Chapter 7 Trustee transferred to them, and any purported transfer of any or all of the Collateral to Ultratec is null and void; and it is further.

(ECF No. 275 at 3). This declaratory relief was intended to clarify that the Trustee conveyed *all* of Imperial's property to Plaintiffs, and to refute Defendants' contention that certain of Plaintiffs' property was gifted to Defendants. (*See* ECF No. 242 at 35, 62, 77–78). In its March 11 Memorandum Opinion, the Court clarified what property the Trustee conveyed to Plaintiffs. (ECF No. 692 at 9–16). Defendants abandoned any argument that they were gifted property to which Plaintiffs' claimed ownership. The 2018 Judgment's grant of declaratory relief is limited to Plaintiffs' property identified in the Memorandum Opinion. (*See* ECF No. 692 at 9–16); *see also Transtexas*, 303 F.3d at 581.

The prior Judgment also afforded Plaintiffs equitable relief:

> ORDERED that the Defendants must immediately deliver physical possession to the Plaintiffs of all assets that the Chapter 7 Trustee conveyed to the Plaintiffs in the Assignment Agreement (as that term is defined in the Findings of Fact and Conclusions of Law entered on the docket on September 21, 2017) and which the Defendants still presently have in their possession, including but not limited to any tangible property, books and records of the Debtor, and proprietary information of the Debtor.

(ECF No. 275 at 3). However, Defendants returned all Plaintiffs' property prior to the 2018 Judgment's entry. (ECF No. 692 at 12–16, 22). With no property to be returned, Plaintiffs have no need for injunctive relief, and the 2018 Judgment's grant of equitable relief can be vacated. *See Transtexas*, 303 F.3d at 581.

## CONCLUSION

Defendants are entitled to partial relief from the prior damages award, the prior attorneys' fee award, and the 2018 Judgment's grant of injunctive relief. A separate Amended Judgment will be issued.

SIGNED 08/18/2021

                                                                Marvin Isgur
                                                                United States Bankruptcy Judge