IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 13-30466 |
| IMPERIAL PETROLEUM RECOVERY | § | |
| CORPORATION, | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |
| | § | |
| DON B. CARMICHAEL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 14-3375 |
| | § | |
| THOMAS BALKE, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION FOLLOWING REMAND

This adversary proceeding was remanded from the District Court to this Court on December 7, 2023. The District Court's remand was based on the Fifth Circuit's decision. *In re Imperial Petroleum Recovery Corp.*, 84 F.4th 264 (5th Cir. 2023). The Fifth Circuit affirmed the bulk of this Court's decision that had been issued at ECF No. 750 on January 7, 2022.

These limited issues were remanded:

1. Post judgment interest was to be included in the Court's judgment. *Id.* at 271. Pursuant to the Fifth Circuit's mandate, post judgment interest is awarded at the rate of 1.87% per annum accruing since January 31, 2018.

2. The Fifth Circuit affirmed that "The Carmichaels later received only one dilapidated MST-1000 unit, partially disassembled by Balker, instead of two renovated ones as expected." *Id.* at 270. It also affirmed that "[t]he Carmichaels were entitled only to the cost of reassembly of the single, aging MST unit that Balke dismantled in violation of the automatic stay." *Id.* at 270. However, it found that this Court had failed to properly measure the cost of reassembly. It instructed the Court to recalculate that amount, inclusive of any costs of repairing "significant wear" that occurred during disassembly. *Id.* at 270. Awardable damages would potentially include a

"forklift and operator," an electrician, an engineer, a "refrigeration tech," and an "automation tech." The Court was instructed to apply a "preponderance of the evidence" standard. *Id.* at 270. A set forth below, this Court has scrupulously applied the Fifth Circuit's mandate. The actual damages award is $9,278.00.

3. The Fifth Circuit gave this Court discretion to adjust the attorneys' fee award. As explained below, the bulk of effort expended by the Carmichael parties was spent attempting to obtain an award of damages not of the kind specified by the Fifth Circuit. The Court recognizes that this effort failed to recover 99% of the requested damages from the stay violation. Nevertheless, there is no reason why fair compensation should not be awarded. The Court awards 40% of the increased damages award as attorneys' fees on remand. That amount raises the total fee award by $2,111.20.

## ANALYSIS OF REMAND ISSUES

**Post-Judgment Interest**

The original judgment in this adversary proceeding was entered on January 31, 2018. ECF No. 275. On that date, the post-judgment interest rate was 1.87% per annum. *Post-Judgment Interest Rates – 2018*, U.S. DIST. & BANKR. CT., S. DIST. OF TEX., https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2018 (last visited July 25, 2025). The mandate in this case requires interest to accrue from the date of the original judgment. *See Imperial Petroleum Recovery Corp.*, 84 F.4th at 271. The amended judgment that is issued pursuant to this Opinion following Remand will bear interest at 1.87% per annum from January 31, 2018. No other post-judgment interest accrues.

**Damages for Violation of the Automatic Stay**

To implement the mandate on remand, the Court issued its Case Management Order. Among other things, that order required the Plaintiffs to file a statement of the cost of reassembly of the MST unit. ECF No. 759 at 1. On January 31, 2024, Plaintiffs filed a "Plaintiffs' Statement of Costs of Reassembly and Repair of MST-1000." ECF No. 764. The statement lists 20 categories of costs, with a total cost of $884,155.84. The bulk of the asserted costs go well beyond the amounts to be awarded under the Fifth Circuit's mandate. The Court separately analyzes each of the 20 categories.

1.  **Costs for Prime Controls Skid Assembly of $174,750.00 plus a 20% Markup for a Total Charge of $200,963.00**

Plaintiffs rely on several parts of the evidentiary record.  $174,750.00 is listed as the cost of the Skid Assembly to be purchased in refurbished condition from Prime Controls, with a mark-up bringing the total cost to $200,963.00.  *See* ECF No. 623-17 at 3.

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on pages 2–3 of ECF No. 764.  $200,963.00 is NOT the cost of reassembling the skid.  This is the cost of a fully refurbished skid assembly.  *See* ECF No. 764-1 at 50:18–21 (APX0043).  The testimony in support of this exhibit is unambiguous.  It is to refurbish the unit back into fully operational condition.  *See* ECF No. 764-1 at 35–40 (APX0028–APX0033).  That is not returning the status quo ante.  As the Fifth Circuit noted, the equipment was dilapidated before the stay violation.  *Imperial Petroleum Recovery Corp.*, 84 F.4th at 270 ("[T]he Carmichaels were entitled only to the cost of reassembly of the single, aging MST unit that Balke dismantled in violation of the automatic stay.").  As the Court previously found (and as affirmed by the Fifth Circuit):

> This estimate exceeds the measure of damages to which Plaintiffs are entitled because, while a disassembled MST 1000 unit was returned, Plaintiffs possessed all the components necessary to reassemble the unit.  Since Plaintiffs could have reassembled the unit, the proper measure of damages would be the cost of reassembly.  At most, Plaintiffs are entitled to the reasonable cost of reassembly of the returned MST 1000 unit, not the cost of renovating it.

ECF No. 692 at 16.

Plaintiffs are entitled to be restored to the position that existed before the stay violation.

Plaintiffs refer to pages APX0035–APX0038 to demonstrate that the refurbishment cost is far less than the replacement cost.  ECF No. 764-1 at 42–45.  Although that appears to be true, restoration would return the unit to a condition far better than it was in prior to its disassembly.  That is not what the mandate instructs this Court to do.

APX0042–APX0043 is a transcript of a portion of Tim Cole's trial testimony.[1] ECF No. 764-1 at 49–50. That transcript demonstrates the cost estimate "of calculating the fair market value for refurbishing an MST-1000 skid in the amount of $884,156." ECF No. 764-1 at 49 (APX0042). Mr. Cole testified that this cost is "[l]ower as compared to the new skid from scratch." ECF No. 764-1 at 49 (APX0042).

APX0045–APX0048 is additional trial testimony from Mr. Cole. ECF No. 764-1 at 52–55. This testimony validates the pricing for the refurbishment.

The Court concludes that there is nothing in the evidentiary record submitted by the Plaintiffs for this category of damage that shows the cost of reassembling the unit or of repairing the unit to the condition that existed prior to the automatic stay violation. Other charges, listed below, are relevant to this category of damages. To avoid double-counting, those charges are analyzed and awarded (if appropriate) under the category listed by the Plaintiffs below.

Based on the absence of any evidence within this category, the Court awards $0.00 for this category.

## 2. Costs for Repair of Ferrite Microwave Transmitter Originally Installed on MST-1000 Demo Unit. Of $20,000.00 plus a 15% Markup for a Total Charge of $23,000.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on pages 4–5 of ECF No. 764.

APX0049–APX0052 is testimony from Tim Cole. ECF No. 764-1 at 56–59. This cost estimate is for refurbishing the existing microwave transmitter. ECF No. 764-1 at 56:14–16 (APX0049). Nevertheless, part of the refurbishment included a charge for reassembling the existing parts that were disassembled. ECF No. 764-1 at 56:14–25 (APX0049). The testimony references Plaintiffs' Exhibit 120 at ECF 623-17. ECF No. 764-1 at 57 (APX0050). ECF No. 623-17 lists the $20,000 and the $23,000 numbers. ECF No. 623-17 at 3. However, neither it nor any of the testimony break out the differences between new material costs and reassembly costs.

APX0065–APX0066 shed no light on the reassembly costs vs. the refurbishment costs. ECF No. 764-1 at 72–73.

---

[1] The Court notes that Defendants object to any reliance on Mr. Cole's testimony based on the Court's prior rulings concerning his qualifications to testify as an expert. The excerpts referenced in this opinion (and cited by Plaintiffs) were admitted at trial and do not constitute expert testimony.

APX0054–APX0061 contain a quotation for the Manufacture and installation of a microwave generator.  ECF No. 764-1 at 61–68.  The total costs of installation, commission and training for a new microwave is listed on APX0055 at $2,500.00–$3,750.00 plus travel and living expenses.  ECF No. 764-1 at 62.  A description of those services is on APX0057.  ECF No. 764-1 at 64.

The estimate for installation, commission and training of the microwave states that the technician will be provided a rate of "US$1,250 per day plus travel and living expenses" and that the work will take approximately "three (2) days."  ECF No. 764-1 at 62.  Plaintiffs have not met their burden in explaining the inconsistency in the estimated number of days worked.  The Court applies the higher figure.  Because the estimate was for more than mere installation, the Court estimates that $1,500.00 is appropriate.  The "preponderance of the evidence" standard allows the Court to make reasonable inferences from the evidentiary record.  "While 'damages may not be determined by mere speculation or guess, it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'"  *DSC Commc'ns Corp. v. Next Level Commc'ns,* 107 F.3d 322, 330 (5th Cir. 1997) (quoting *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 24 (5th Cir. 1974), *cert. dismissed,* 419 U.S. 987 (1974)).  In this case, the charge is for "installation, commission and training" with respect to the microwave.  Only "installation" qualifies as a compensable damage.  Although no specific further breakdown is provided as to the labor costs for reassembly, the Court infers from a review of the APX0054–APX0061 that $1,500.00 is a reasonable estimate.

APX0024 is merely a summary spreadsheet repeating the $23,000.00 of total refurbishment costs.  ECF No. 764-1 at 31.

Separate from the reassembly costs are the costs to repair wires that have been cut.  There is no evidence as to precisely when the wires were cut.  APX0072–APX0073 address that wires had been cut.  ECF No. 764-1 at 79–80.  These pages do not provide any estimate of the cost of repair.  Although not referenced by the Plaintiffs, there is a further discussion of the cut wires at APX0322.  ECF No. 764-1 at 88.  The testimony is that it was cheaper to rewire the entire skid than to "make the existing wiring work."  ECF No. 764-1 at 333:6–9 (APX0322).  At APX0321, the testimony is that the unit had been in a barn for a number of months before it was inspected.  ECF No. 764 at 332:22–24.  Nevertheless, ECF No. 623-17 contains the summary of all charges.  It reflects that $5,750.00 (including markup) of miscellaneous electrical material was required.  ECF No. 623-17 at 3.  ECF No. 623-17 reflects that the contract would have various markups but that there was no separate labor charge for the electrical work.  There is no direct evidence that any

wires were cut in violation of the stay. There is evidence that the unit had been last operated (it is unclear what parts were operable) in June 2013. ECF 692 at 21. The automatic stay arose on January 31, 2013. ECF No. 242 at 4. The Court finds that the preponderance of the evidence demonstrates that Plaintiffs should be awarded the rewiring costs because it is more likely than not that the wires were cut after the stay arose. The full $5,750.00 is awarded.

The Court concludes that $7,250.00 (i.e., the $5,750.00 for rewiring plus an estimate of the installation charge) is the evidentiarily based amount for reassembly of this component. The Court notes that the rewiring charge is for the entire skid and not just one component. ECF No. 764-1 at 332–33. The entire rewiring award is encompassed in this category of damages and not repeated below.

### 3.  Costs for Reuse/Repair of Chiller for a Total Charge of $17,250.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 6 of ECF No. 764.

The supporting evidence relates to the cost of refurbishing the chiller. ECF No. 764 at 34, 82, 84–85. None of these costs relate to the cost of reassembling the chiller to its state prior to the violation of the stay. $0.00 is awarded for this component of the alleged damages.

### 4.  Repair of Waveguide to Working Condition for a Total Charge of $11,500.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 7 of ECF No. 764.

The estimate at ECF No. 764-31 is for material listed as a "Tuner/Waveguide." It lists no reassembly charges. ECF No 764-1 at pages 56–57 also describes the cost to refurbish the waveguide. There is no reassembly estimate. $0.00 is awarded for this component.

### 5.  Repair of Applicator to Working Condition for a Total Charge of $5,750.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 8 of ECF No. 764.

The estimate on page 31 of ECF No. 764-1 is for material listed as an "Applicator." It lists no reassembly charges. ECF No 764-1 at pages 6–57 also describes the cost to refurbish the applicator. There is no reassembly estimate. $0.00 is awarded for this component.

### 6. Replace Transmitters Switches and Indicators for a Total Charge of $31,395.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on pages 9–10 of ECF No. 764.

The first charge is for $22,425 for transmitters that is referenced on ECF No. 764-1 at page 31. These are all listed as material charges. There is no listing of any reassembly charges.

The second charge is for $4,140 for switches that is referenced on ECF No. 764-1 at page 31. These are all listed as material charges. There is no listing of any reassembly charges.

The second charge is for $4,830 for indicators that is referenced on ECF No. 764-1 at page 31. These are all listed as material charges. There is no listing of any reassembly charges.

$0.00 is awarded for his component.

### 7. Repair Process Valves for a Total Charge of $17,250.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 10 of ECF No. 764.

The "supporting evidence" is referenced as appearing at ECF No. 764-1 at page 31 as a listing for "Hardware." The "supporting evidence" identifies a "Process Valves" cost of $17,250.00. This does not reference any reassembly cost.

$0.00 is awarded for his component.

### 8. Electric Control Panels for a Total Charge of $11,500.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 11 of ECF No. 764.

The "supporting evidence" is referenced as appearing at ECF No. 764-1 at page 31 as a listing for "Hardware." The "supporting evidence" does identify two electrical panels each at $5,750.00. This does not reference any reassembly cost. The court has already awarded the wiring costs. No additional reassembly cost is compensable to return the panels to their pre-violation status.

$0.00 is awarded for this component.

### 9.  Piping Material for a Total Charge of $8,625.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 11 of ECF No. 764.

The "supporting evidence" is referenced as appearing at ECF No. 764-1 at page 31 as a listing for "Hardware." The "supporting evidence" does identify Piping Material at a cost of $8,625.00. This does not reference any reassembly cost. The "supporting evidence" also references testimony by Mr. Cole that the existing piping would be used. The inference of the testimony is that additional piping would be required. The cost estimate of $8,750.00 is solely a material charge with a mark-up. No reassembly charges are provided.

$0.00 is awarded for his component.

### 10. Misc. Electrical Material for a Total Charge of $5,750.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 12 of ECF No. 764.

The "supporting evidence" is referenced as appearing at ECF No. 764-1 at page 31 as a listing for "Hardware." The "supporting evidence" does identify Misc. Electrical Material at a cost of $5,750.00. This does not reference any reassembly cost. The cost estimate of $5,750.00 is solely a material charge with a mark-up. No reassembly charges are provided.

$0.00 is awarded for his component.

### 11. Replace PLC (Logic Controller That Performs the Logical Functions) for a Total Charge of $21,259.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on pages 12–13 of ECF No. 764.

The "supporting evidence" lists multiple components. The first are described at ECF No. 764-1 at page 108. The listings are under a heading titled "Material Costs." Three separate materials charges are listed. No reassembly charges are listed.

The second components (described in detail at page 13 of ECF No. 764) are also contained in the same materials section. They also list no reassembly charge.

Supporting testimony is offered from Mr. Cole at ECF No. 764-1 at pages 38–41 and 105–106. He compared the cost of refurbishing the unit with replacing the unit. He concluded that replacing the unit was cheaper than refurbishing it. But

Plaintiffs are not entitled to a refurbished unit.  They are entitled to a reassembled unit in its condition immediately before the stay violation.  Neither the testimony nor the documents support this component of the damages.

$0.00 is awarded for his component.

## 12. Compressed Air Dryer/Regulator for a Total Charge of $11,500.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 14 of ECF No. 764.

The "supporting evidence" is the same as for many other issues.  It is a material charge with a mark-up for an Air Dryer/Regulator listed at ECF No. 764-1 at page 31.  This is not a reassembly charge.

$0.00 is awarded for his component.

## 13. Heat Exchanger for a Total Charge of $34,500.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 14 of ECF No. 764.

The "supporting evidence" is a material charge with a mark-up for a Heat Exchanger listed at ECF No. 764-1 at page 31.  This is not a reassembly charge.

$0.00 is awarded for his component.

## 14. Meetings in Support of Rebuild of MST Microwave Unit for a Total Charge of $23,760.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 15 of ECF No. 764.

The "supporting evidence" appears to be anticipated charges for the balance of the work listed on the related pages of this estimate.  Those charges, and apparently these meetings, are for a complete refurbishment of the unit.  There does not appear to have been any estimate of a meeting to discuss mere reassembly.  Mr. Cole's testimony (ECF No. 764-1 at pages 87–88) confirms that the meetings were for either refurbishment or for building a new unit.  Neither is compensable.

$0.00 is awarded for his component.

### 15. Documentation in Support of Rebuild of MST Microwave Unit for a Total Charge of $48,600.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 15 of ECF No. 764.

The "supporting evidence" located at ECF No. 764-1 at page 32 lists "Documentation" for a total charge of $48,600.00. The documentation is detailed on page 2 of ECF No. 623-17. The various documents are listed as "URS", FRS, SDS/HDS, FAT, Oper./Maint manual, Training document." For those that the Court can decipher, it appears that these are documents required to operate the unit. If these existed before reassembly, they can still be used. If they did not exist before reassembly, the Plaintiffs are not entitled to enhance their position in the guise of damages. From the context of the testimony and evidence, this is NOT documentation regarding reassembly of the unit. It is documentation for the complete refurbishment of an $884,156.00 unit. It is not compensable.

$0.00 is awarded for his component.

### 16. Configuration of Reassembling MST Microwave Unit for a Total Charge of $152,800.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 16 of ECF No. 764.

The "supporting evidence" located at ECF No. 764-1 at page 32 lists "Configuration" for a total charge of $152,800.00. Testimony from Mr. Cole is offered at ECF No. 764-1 at pages 105–106. It is not helpful. From the context of the testimony and evidence, this is NOT configuration required to reassemble the unit. This is the configuration of an entire refurbished unit with a replaced set of computer controls. The components include "Develop I/O List, Staging area setup, PLC, HMI, Engineering Design, Baseline/upgrade equipment, and Specs and Purchasing." In particular, there is an $86,400.00 charge for Baseline/upgrade equipment. This charge alone makes clear that this is not a mere reassembly. It is the cost of a completely refurbished $884,156.00 unit with replaced (not reassembled) computers. It is not compensable.

$0.00 is awarded for his component.

### 17. Testing and Certification of Reassembled MST Microwave Unit for a Total Charge of $58,320.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 17 of ECF No. 764.

The "supporting evidence" located at ECF No. 623-17 lists three items under testing. These are Internal testing, FAT and Other for a total of $58,320.00. Testimony from Mr. Cole is offered at ECF No. 764-1 at pages 88–99 and 101. It is not helpful to Plaintiff's position. Mr. Cole testified that these costs were critical to incur before a unit was shipped to a customer. He uses an example of a unit shipped to Chad in Africa. It is unambiguous that these costs were not caused by any stay violation. Prior to the stay, the unit was not in any condition to be shipped to a customer. A reassembled unit, without refurbishment, could not have been shipped to a customer. The reassembled unit, of course, could then have been refurbished and the refurbished unit could be shipped out. At that point, these costs would make sense. But the costs did not change with the stay violation. These charges are not compensable.

$0.00 is awarded for his component.

### 18. Project Management in Support of Rebuild of MST Microwave Unit for a Total Charge of $45,950.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 18 of ECF No. 764.

These are charges for management to supervise the activities of others and to coordinate the entirety of the refurbishment project. There is no breakout on any of the supporting evidence to allocate between reassembly and other charges. The Court has awarded $7,250.00 of damages elsewhere in this opinion. That is 1.05% of the total amount to have been supervised. It seems reasonable to award this type of overhead cost, but it must be dramatically reduced to reflect that the underlying work is largely non-compensable. In the absence of evidence to the contrary, the Court will award a prorated amount. The pro rata award would be $482.00. The balance of the charges is not compensable.

$482.00 is awarded for his component.

### 19. Inbound and Outbound Freight Costs in Support of Rebuild of MST Microwave Unit for a Total Charge of $8,004.84

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 18 of ECF No. 764.

These costs all relate to shipping charges for components for which no damages were awarded. Because the materials are not compensable, the freight cost component is also non-compensable.

$0.00 is awarded for his component.

### 20. Contingency for a Total Charge of $147,359.00

The Court has reviewed all of the "supporting evidence" referenced by the Plaintiffs on page 18 of ECF No. 764.

These are contingencies. It is reasonable to have a contingency for unexpected events. But the contingency must be proportionate to the compensable work. There is no breakout on any of the supporting evidence to allocate between reassembly and other charges. The Court has awarded $7,250.00 of damages elsewhere in this opinion. That is 1.05% of the total amount to have been supervised. In the absence of any evidence to the contrary, the Court awards a prorated amount. The pro rata award would be $1,546.00. The balance of the charges is not compensable.

$1,546.00 is awarded for this component.

### Conclusion

An amended judgment will be issued.

SIGNED 07/29/2025

Marvin Isgur
United States Bankruptcy Judge